**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Case No. 25-cr-372 (MJD/DJF) |
| Plaintiff, | |
| v. | **ORDER AND
REPORT & RECOMMENDATION** |
| Terrell Vonshay Roberson, | |
| Defendant. | |

This matter is before the Court on Defendant Terrell Vonshay Roberson's Motion to Disclose and Make Informants Available for Interview ("Motion to Disclose Informants") (ECF No. 30), Motion to Suppress Evidence Obtained Pursuant to Warrant (ECF No. 32), and Motion to Suppress Physical Evidence Obtained from Warrantless Search (ECF No. 34). The Court held a hearing on the motions on April 23, 2026 ("Motions Hearing"). (ECF Nos. 48, 52.) During the hearing, the Court received into evidence one exhibit from the government and thirty exhibits from the defense. (*See* ECF No. 52 at 2.) The Court heard testimony from two officers of the Minneapolis Police Department ("MPD"), Sergeant Jeffrey Werner and Lieutenant Adam Lepinski. (*Id*.) Based on the parties' written submissions and oral arguments, and on the entire file, the Court denies Mr. Roberson's Motion to Disclose Informants (ECF No. 30) and recommends Mr. Roberson's Motion to Suppress Evidence Obtained Pursuant to Warrant (ECF No. 32) and Motion to Suppress Physical Evidence Obtained from Warrantless Search (ECF No. 34) be denied.

## I.    BACKGROUND

Sergeant Werner testified that he received information in March 2025 from a confidential reliable informant ("CRI"), who said Mr. Roberson was dealing fentanyl and had been in

1

possession of firearms.  (ECF No. 52 at 27-28.)  The CRI reported that Mr. Roberson conducted his operations from 4019 Dupont Avenue North, Unit #2 ("4019 Dupont").  (*Id*.)  Police surveillance and investigation established that 4019 Dupont was a duplex and that Lakaila Conley was its primary resident.  (*Id*. at 31, 46.)

The police took multiple steps to corroborate the CRI's information.  (*Id*. at 29.)  In addition to surveilling Mr. Roberson entering 4019 Dupont, Sergeant Werner obtained a phone tracking warrant using a phone number the CRI had provided to track Mr. Roberson's location.  (*Id.* at 28-31; Def. Ex. 4, "Phone Tracking Warrant".)  Sergeant Werner also obtained a warrant to place a tracking device on Mr. Roberson's Dodge Ram truck. (ECF No. 52 at 29–31; Def. Ex. 5, "Truck Tracking Warrant".)  According to Sergeant Werner, police observed from the tracking that Mr. Roberson would go to the duplex at 4019 Dupont "daily, almost, and sometimes multiple times throughout the day", but he slept at a different address in Roseville or St. Paul.  (*Id*. at 31.)  As part of their investigation, police also used the CRI to conduct a controlled purchase of fentanyl from Mr. Roberson just outside 4019 Dupont.  (*Id*. at 34; *see also* Def. Ex. 6 at 3-4.)

Based on the CRI's information, the controlled purchase, and surveillance of Mr. Roberson, Sergeant Warner obtained several additional warrants, including warrants to search: (1.) Mr. Roberson and his Dodge Ram truck ("Dodge Ram Warrant") (Def. Ex. 6); 4019 Dupont, Unit #2 ("4019 Dupont Warrant") (Def. Ex. 7); and (3.) Mr. Roberson and his residence in Roseville at 3110 Old Highway 8, Apartment #417 ("3110 Old Highway 8 Warrant") (Def. Ex. 8).  (ECF No. 52 at 34–35.)  Sergeant Werner's applications for each of the warrants he obtained all either relied on information provided to Sergeant Werner by the CRI or described the controlled purchase involving the CRI.

Mr. Roberson's suppression motions challenge the execution of the 4019 Dupont Warrant as exceeding its scope when police searched a vehicle parked in a garage adjacent spot behind the duplex. The 4019 Dupont Warrant authorizes the search of the "described premises: 4019 Dupont Ave N, Unit #2" for illegal narcotics, narcotics paraphernalia, documents showing constructive possession, firearms and firearms accessories, proceeds from the sale of illegal narcotics, and cell phones. (Def. Ex. 7.) Sergeant Werner testified that he understood "premises" in this context to mean "the residence where they're staying, whether it's an apartment, whether it's a house, and then everything, you know, tied to that premise[s] as far as, you know, the property, the yard, the garage." (ECF No. 52 at 26.) When asked how he decides whether a car parked in the backyard is on or off a premises to be searched, Sergeant Werner said, "If you got things in the house, a car title, a car key that's tied to that vehicle that's parked in the back, we're going to consider that part of the premise[s]." (*Id*. at 27.)

MPD officers executed the warrants on March 27, 2025. (*Id*. at 35.) They stopped Mr. Roberson as he was driving his Dodge Ram truck away from 4019 Dupont and arrested and searched him. (*Id.* at 41.) After the traffic stop, they returned to 4019 Dupont and executed the 4019 Dupont Warrant by searching Unit #2. (*Id.*)

Inside Unit #2, the officers found keys to a GMC Yukon in a jacket pocket. (*Id*. at 41–42.) Lieutenant Lepinski then used the keys to connect the unit to a Yukon parked in the rear of the duplex by fitting one of the keys into the lock. (*Id*. at 42, 45, 100.) Officers searched the Yukon and found documents listed to Lakaila Conley and another individual, but no documents tying the vehicle to Mr. Roberson. (*Id*. at 51, 101.) The officers also located three backpacks in the rear of the Yukon. (*Id*. at 93, 102–103.) Upon opening the backpacks, they found three firearms, gun

magazines with ammunition, narcotics, and items used for narcotics packaging. (*Id*. at 51, 102–103.)

Following the searches on March 27, 2025, Sergeant Werner obtained three additional warrants, including: (1.) a DNA buccal swab warrant for Mr. Roberson's DNA (Def. Ex. 11); (2.) a data warrant for three cell phones collected during the search of Mr. Roberson and his truck (Def. Ex. 13); and a warrant to search a 2008 Mazda parked at 4019 Dupont that police had observed Lakaila Conley driving (Def. Ex. 14). (ECF No. 52 at 92–93.) In support of his applications for these warrants, Sergeant Werner detailed the MPD's investigation into Mr. Roberson, Lakaila Conley's association with 4019 Dupont, and the firearms and narcotics located during their search of the Yukon. (Def. Ex. 11 at 2; Def. Ex. 13 at 2; Def. Ex. 14 at 2.)

The government asserts that Mr. Roberson's DNA profile was later developed on the firearms located inside the Yukon. (*See* ECF No. 52 at 11.) Based on this evidence and the other evidence derived from the various warrants described herein, the government indicted Mr. Roberson with possession with intent to distribute fentanyl, possession of a firearm in connection with a drug trafficking crime, and felon in possession of a firearm. (ECF No. 1.) Mr. Roberson's pretrial motions followed. He seeks orders directing the government to disclose the identity of Sergeant Werner's CRI and suppressing the evidence seized from the Yukon. He also seeks to suppress any evidence derived from the warrants following the search of the Yukon as fruits of the poisonous tree.

## II.     ANALYSIS

### A.     Motion to Disclose Informants

Mr. Roberson's Motion to Disclose Informants (ECF No. 30) seeks an order compelling the government to disclose the identity of any informant utilized by the police in their investigation

of Mr. Roberson, to make any such informant available for interview in preparation for trial, and to disclose any such informant's criminal history. Based on the evidence in the record, the only informant at issue is the CRI who initially alerted Sergeant Werner to Mr. Roberson's alleged fentanyl trafficking in March 2025 and later participated in the controlled buy.

"The Government has a general, although not absolute, 'privilege to withhold the disclosure of the identity of a confidential informant.'" *United States v. Washington*, No. 21-cr-126 (ADM/ECW), 2022 WL 538878, at *16 (D. Minn. Feb. 23, 2022) (quoting *Carpenter v. Lock*, 257 F.3d 775, 779 (8th Cir. 2001)), *report and recommendation adopted*, 2022 WL 1658175 (D. Minn. May 25, 2022). "In a motion to compel disclosure of a confidential informant, the defendant bears the burden of demonstrating a need for disclosure." *United States v. Lapsley*, 334 F.3d 762, 763 (8th Cir. 2003) (citation omitted). "The court must weigh the defendant's right to information against the government's privilege to withhold the identity of its confidential informants." *Id.* at 763–64 (quotation omitted). There is no litmus test to determine whether disclosure is justified; instead, courts must consider "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Rovario v. United States*, 353 U.S. 53, 62 (1957). When the "disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61.

The Eighth Circuit instructs that "one of the most relevant factors to be weighed by the court in determining whether to order disclosure is whether or not the evidence is *material* to the accused's defense or a fair determination of the cause." *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991) (brackets omitted) (emphasis in original) (quoting *United States v. Barnes*,

486 F.2d 776, 778 (8th Cir. 1973)). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 878. Generally speaking, when the witness "is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense[,]" and disclosure is required. *Devose v. Norris*, 53 F.3d 201, 206 (8th Cir. 1995). In contrast, in "cases involving 'tipsters' who merely convey information to the government but neither witness nor participate in the offense, disclosure is generally not material to the outcome of the case and is therefore not required." *Harrington*, 951 F.2d at 878; *see also, e.g., United States v. Hollis*, 245 F.3d 671, 674 (8th Cir. 2001) ("[T]he identity of a 'tipster' whose observations formed the basis for a search warrant but who is not a necessary witness to the facts is not subject to compulsion.").

Mr. Roberson argues the government must disclose the identity of the CRI because the CRI played a critical role in the investigation and establishing probable cause for the search warrants. (ECF No. 58 at 1–2.) The government describes the CRI as a mere "tipster", who provided information supporting the warrants at issue but did not participate in the offenses charged.

The government's argument is more persuasive. Although the CRI's tip prompted the investigation, there is nothing in the record to suggest the CRI participated in the offenses charged in the Indictment. Nor is there any indication, at this stage in the case, that the government intends to call the CRI to testify at Mr. Roberson's trial. The CRI is thus best characterized as a tipster whose identity is not material to the outcome of the case. *Harrington*, 951 F.2d at 878. There is no dispute that the CRI's tip and participation in a controlled buy contributed to probable cause for the warrants. However, these facts do not establish materiality because the government did not charge Mr. Roberson with his sale of fentanyl to the CRI. *See United States v. Bradley*, 924 F.3d 476, 482 (8th Cir. 2019) (holding "confidential informant's participation in an uncharged

controlled buy" did not alter conclusion that informant's identity was not subject to disclosure); *Harrington*, 951 F.2d 876 at 878 (holding confidential informant who participated in controlled buy but "neither witnessed nor participated in the search" that led to the charges "could not offer any evidence bearing on the … charges"); *United States v. Cole*, 23-cr-175 (DWF/DJF), 2023 WL 9547891, at *6–7 (D. Minn. Oct. 25, 2023) (finding probable cause based in part on information from an informant's tip and a controlled buy), 2023 WL 4760585, at *2–3 (July 26, 2023) (denying motion to disclose informants' identities), 2024 WL 620218, at *1–3 (Feb. 14, 2024) (same).

Mr. Roberson further argues the CRI's identity may be material in challenging the completeness and accuracy of the warrant affidavits under *Franks v. Delaware*, 438 U.S. 154 (1978). This argument is similarly unconvincing. Mr. Roberson argues "the Motion Hearing established substantial grounds" to challenge the warrant affidavits, and that the CRI is the only witness capable of confirming the representations in those affidavits. But Mr. Roberson does not explain what his "substantial grounds" to challenge the affidavits allegedly are or how the CRI's testimony might be relevant to any such challenge, and the Court will not speculate for him. Thus, Mr. Roberson has not made the preliminary showing of falsity necessary to obtain a *Franks* hearing, and indeed, he has not even filed a *Franks* motion. "The decision in *Franks* neither required nor contemplated routine disclosure of informants' identities, and [the Supreme Court] took care to avoid deciding or predetermining 'the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once a substantial preliminary showing of falsity has been made.'" *Colorado v. Nunez*, 465 U.S. 324, 327 (1984).

Granting Mr. Roberson's request for the CRI's identity based on his unsupported conjecture that it might theoretically support a *Franks* motion would undermine the holdings in both *Rovario* and *Huntingon*. The purpose of a *Franks* motion is to challenge the affiant's

7

representations, not the informant's, and Mr. Roberson has proffered no reason to question the affiant's representations here. *See United States v. Skramstad*, 649 F.2d 1259, 1265 (8th Cir. 1981) (holding defendant cannot use *Franks* to impeach an informant); *United States v. Goodson*, No. 96-cr-2051, 1996 WL 33425406, at *6 (N.D. Iowa May 20, 1996) (rejecting defendant's "catch 22" argument that he could not make a *Franks* challenge because he could not learn the informant's identity), *aff'd*, 165 F.3d 610 (8th Cir. 1999).

Mr. Roberson has not provided a persuasive basis to conclude the CRI's identity is material to the outcome of his case. For this reason, Mr. Roberson's Motion to Disclose Informants (ECF No. 30) is **DENIED**.

### B. Motions to Suppress Evidence

Mr. Roberson brings two motions to suppress evidence. His Motion to Suppress Physical Evidence Obtained from Warrantless Search (ECF No. 34) seeks an order suppressing the evidence seized from the Yukon, including the fentanyl and guns he is charged with possessing. Mr. Roberson argues the warrant authorizing the search of 4019 Dupont did not extend to the Yukon parked outside the unit, and that the exigency, plain view, automobile and good faith exceptions to the warrant requirement do not apply. (*See* ECF No. 57 at 2-3.) Mr. Roberson's Motion to Suppress Evidence Obtained Pursuant to Warrant (ECF No. 32) seeks an order suppressing all the evidence obtained from follow-on warrants that rely upon the evidence seized from the Yukon, on the ground that all such evidence is derived from an illegal search.

### 1. Standing

As a threshold matter, the government argues the Court need not consider whether the Yukon search exceeded the scope of the warrant because Mr. Roberson lacks standing to challenge it. (ECF No. 62 at 6–7.) The government contends standing is lacking because there is no evidence

Mr. Roberson owned, regularly operated, or stored his property inside the vehicle.  (*Id*.)  Mr. Roberson argues his standing to challenge the search arises from his reasonable expectation of privacy in: (1.) 4019 Dupont; (2.) the Yukon; and (3.) the three backpacks inside the Yukon.  (ECF No. 65 at 6–16.)

Although the government and Mr. Roberson frame this question as a "standing" inquiry, the Supreme Court clarified in *Minnesota v. Carter* that "in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing."  525 U.S. 83, 88 (1998).  The Court thus considers whether the Yukon search implicated Mr. Roberson's Fourth Amendment privacy rights.

"Fourth Amendment rights are personal [and] ... may not be vicariously asserted." *United States v. Washington*, 197 F.3d 1214, 1216 (8th Cir. 1999) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)).  To establish a violation of his Fourth Amendment rights, "[t]he defendant moving to suppress bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search."  *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995) (per curium); *see also Minnesota v. Carter*, 525 U.S. at 88 ("[C]apacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.") (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).  Therefore, if a defendant fails to prove a sufficiently close connection to the places searched, he lacks capacity to claim they were searched illegally.  *United States v. Russell*, 847 F.3d 616, 618 (8th Cir. 2017) (citations omitted).

In determining whether a defendant has a sufficient privacy expectation to bring a Fourth Amendment challenge, courts consider several factors, including:

ownership, possession and/or control of the area searched, or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

*United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134 (1978). However, in appropriate circumstances, a person can have a legitimate expectation of privacy in another person's home. *Minnesota v. Olson,* 495 U.S. 91, 95 (1990). "[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Carter,* 525 U.S. at 90.

Mr. Roberson did not have a protected privacy interest in 4019 Dupont. The evidence establishes that Mr. Roberson lived elsewhere, in Roseville; he was not its owner or occupant. Nor is there evidence to suggest he stayed at the duplex as Lakaila Conley's overnight guest. Police tracked his movements through surveillance, his phone and his truck, and observed that he went to his address in Roseville "pretty much all of the overnight times", while he visited 4019 Dupont during the day. (*See* ECF No. 52 at 31.) At best, he could be categorized as a frequent visitor of the unit, which is insufficient to establish a protected privacy interest in the duplex. *See Carter,* 525 U.S. at 90.

Moreover, courts are particularly skeptical of claimed privacy interests in a residence when those claimed privacy interests are based on the defendant's use of the residence as a "stash house". *See United States v. Sawyer*, No. 4:24-cr-267 (SEP/NCC), 2025 WL 2952283, at *4 (E.D. Mo. Sept. 8, 2025), *report and recommendation adopted*, 2025 WL 2962498 (E.D. Mo. Oct. 17, 2025)

10

("A defendant does not have a reasonable expectation of privacy in a 'stash house' that is the residence of another.") (citing *United States v. Huerta*, No. 2:08-cr-102(01), 2009 WL 5065694, at *1–2 (E.D. Tenn. Dec. 16, 2009)).  In attempting to establish his connection to the duplex, Mr. Roberson points out that Sergeant Werner alleged he was "using the address of 4019 Dupont Ave N #2 to store and distribute fentanyl out of." (ECF No. 65 at 13, quoting Def. Exs. 11, 13 and 14).  But this allegation tends to show that Mr. Roberson used 4019 Dupont Ave as a stash house, not as an inhabitant or overnight guest.  He cites no precedent for the proposition that his use of the duplex to stash narcotics conferred a sufficient expectation of privacy in the duplex for him to challenge the execution of the search.  Because Mr. Roberson lacks capacity to challenge the search of 4019 Dupont, he cannot contest the seizure of the keys to the Yukon found in Unit #2 during that search.

Mr. Roberson also had no expectation of privacy in the Yukon itself.  First, because he did not have a privacy interest in 4019 Dupont, he also had no expectation of privacy in the Yukon that otherwise might have conveyed to him through a privacy interest in the duplex.  *See United States v. Gomez*, 276 F.3d 694, 697 (5th Cir. 2001) (homeowner had reasonable expectation of privacy in vehicle parked in his driveway but owned by third person).  Second, there is no evidence that he owned, leased or regularly drove the Yukon.  "The United States Supreme Court has explicitly determined that a person has no reasonable expectation of privacy in an automobile belonging to another." *United States v. Green*, 275 F.3d 694, 699 (8th Cir. 2001) (citing *Rakas*, 439 U.S. at 148–49; *see United States v. Anguiano*, 795 F.3d 873 (8th Cir. 2015) (mere passenger lacked reasonable expectation of privacy in vehicle).  Indeed, Mr. Roberson was not even near the Yukon at the time of the search.  *See Gomez,* 16 F.3d at 256 (finding defendant had no reasonable

11

expectation of privacy in vehicle he did not own, even though he was driving it at the time of the search).

Mr. Roberson argues his alleged storage of the backpacks seized from the Yukon created a privacy interest in the vehicle. (ECF No. 65 at 12.) But to accept the notion that one can establish an expectation of privacy in a place simply by putting his belongings there would turn *Carter*, 525 U.S. at 88, and its progeny on its head. It is plainly not the rule of law that anytime a person's belongings are seized, he therefore must have capacity to challenge the seizure by virtue of that ownership interest. Mr. Roberson's purported ownership of the backpacks seized from the Yukon, without more, could not convey to him an expectation of privacy sufficient to challenge its search.[1] *See United States v. Rodriguez*, No. 11-cr-0205 (JRT/LIB), 2011 WL 5040654, at *3 (D. Minn. Oct. 6, 2011) ("[T]he fact that some of the Defendant's possessions were in the vehicle does not give the defendant a sufficient privacy interest in the vehicle in order to challenge the search."), *report and recommendation adopted*, 2011 WL 5040525 (D. Minn. Oct. 24, 2011), and *report and recommendation adopted*, 2012 WL 73008 (D. Minn. Jan. 10, 2012).

Mr. Roberson further argues he had an independent expectation of privacy in the backpacks themselves. The Court's assessment of this argument is less straightforward. In appropriate circumstances, a person does have a protectable privacy interest in a sealed bag or container that he owns, even if it is found in place he does not own or control. *See United States v. Davis*, 332 F.3d 1163, 1167–68 (9th Cir. 2003) ("A person has an expectation of privacy in his or her private, closed containers and does not forfeit that expectation of privacy merely because the container is

---

[1] Mr. Roberson makes much of the fact that he was the target of the investigation (*see* ECF No. 65 at 12), but that alone is not enough to establish an expectation of privacy in the places searched. And in any event, it is unreasonable to assume he was the *only* target, as evidenced by the fact that police sought and obtained a warrant to search Lakaila Conley's Mazda, which was not connected to Mr. Roberson. (Def. Ex. 14.)

located in a place that is not controlled exclusively by the container's owner."); *Bond v. United States*, 529 U.S. 334 (2000) (holding bus passenger had expectation of privacy in closed, opaque bag stored above his seat); *United States v. Alberts*, 721 F.2d 636 (8th Cir. 1983) (upholding challenge to warrantless search of opaque, closed bags owned by the defendant, which the defendant had stored on her half-sister's property).  However, in each of these cases, the defendant's ownership interest in the bag or bags in question was clear.  *See Davis*, 332 F.3d at 1166 (witness told police defendant owned belongings in bedroom where bag was found); *Bond*, 529 U.S. at 336 (defendant told border patrol agent bag was his); *Alberts*, 721 F.2d at 639 (half-sister told officers defendant owned items in bags found on her property).  The Eighth Circuit has rejected similar challenges when evidence of the defendant's ownership in the bags at issue was not presented.  *See United States v. Stallings*, 28 F.3d 58, 60-61 (8th Cir. 1994) (finding defendant had no subjective expectation of privacy in a tote bag left in the underbrush of his neighbor's field when the defendant "put on no evidence of his possession or control of the bag, his historical use of the tote bag, or his ability or attempts to regulate access to it"); *United States v. Douglas*, 744 F.3d 1065, 1070 (8th Cir. 2014) (rejecting defendant's challenge to seizure of shotgun found in trash bag on relative's property because defendant had offered no "evidence establishing a close personal connection to the plastic bag").

The problem with Mr. Roberson's argument is that he did not present any evidence establishing a possessory interest in the backpacks seized from the Yukon.  The testimony presented at the hearing established that Mr. Roberson did not live in the duplex and had no apparent interest in the Yukon.  Upon searching the Yukon, police found pieces of mail and other documents listed to Lakaila Conley and a driver's license for an unrelated third-party.  (ECF No. 52 at 51, 101.)  They found nothing connecting Mr. Roberson with the vehicle.  (*Id.*)  Nor is there

any evidence linking Mr. Roberson to the backpacks themselves.  There is no suggestion in the record that his name was on or in the backpacks or that anyone told police he owned them.  Even the government's search warrant affidavits do not assume Mr. Roberson's ownership of the bags:

> During the search officers founds keys to a vehicle that was parked in the rear of 4019 Dupont Ave N.  While searching that vehicle, officers found three backpacks. Inside the backpacks officers found a total of three handguns, one handgun had a switch on it that made the gun fully automatic.

Mr. Roberson contends the government takes inconsistent positions when it argues he stashed his contraband in the Yukon but has no expectation of privacy in the bags.  (ECF No. 65 at 6.)  However, Mr. Roberson "may not rely on 'positions the government has taken in the case' but must 'present evidence of his standing, or at least ... point to specific evidence in the record which the government presented [that] established his standing.'"  *United States v. Maxwell*, 778 F.3d 719, 732 (8th Cir. 2015), citing *United States v. Zermeno,* 66 F.3d 1058, 1062 (9th Cir.1995). Moreover, the government proffered that its evidence linking Mr. Roberson to the contraband is his DNA; not his ownership or control of the backpacks where the contraband was found.  (*See* ECF No. 52 at 11.)  While there is currently insufficient evidence in the record to test the government's proffer, it leaves open the possibility that Mr. Roberson gave the contraband to someone else, either to keep or to store in their own backpacks on his behalf.

Mr. Roberson claims "the Government's evidence is that Roberson owned the backpacks containing the drugs and guns at issue", however, he identifies no evidence that actually supports this statement.  (ECF No. 65 at 11.)  He cites to one of the warrant affidavits Sergeant Werner prepared (*see id*. at 7, citing Def. Ex. 11), but the cited affidavit is unavailing.  It alleges, in relevant part, that: (1.) Mr. Roberson was using 4019 Dupont "to store and distribute fentanyl out of"; (2.) officers found keys to a vehicle parked in the rear of the duplex, and while searching the vehicle "officers found three backpacks" containing firearms and narcotics; and (3.) Mr. Roberson is not

allowed to possess firearms.  (Def. Ex. 11.)  Though the affidavit asserts probable cause to believe

Mr. Roberson at some point possessed the contents of the backpacks, the affidavit does not allege

he possessed the backpacks themselves.  There is simply nothing in the record to suggest Mr.

Roberson owned or controlled the backpacks.  He has put on no evidence of "his possession or

control of the bag[s], his historical use of the [bags], or his ability or attempts to regulate access to

[them]." *Stallings*, 28 F.3d at 60-61.  Because Mr. Roberson has not demonstrated a possessory

interest in the backpacks, he cannot claim a privacy interest in them.

Mr. Roberson has not established a reasonable expectation of privacy in the duplex, the

Yukon or the backpacks, and therefore, he lacks capacity to challenge the execution of the warrant

and the seizures of contraband from the Yukon.  And because Mr. Roberson lacks capacity to

challenge the seizures from the Yukon, his challenge to the follow-on warrants as fruits of an

illegal search also fails.  *See, e.g., United States v. Hastings*, 685 F.3d 724, 728 (8th Cir. 2012)

(evidence should be excluded as "fruit of the poisonous tree" only if the defendant establishes that

police misconduct is a but-for cause of obtaining that evidence).  The Court recommends his

motions to suppress (ECF Nos. 32 and 34) be denied on these grounds.

### 2.   Scope

The Court's conclusion that Mr. Roberson lacks standing to challenge the search of the

Yukon is dispositive.  In the interest of completeness, however, the Court briefly addresses Mr.

Roberson's challenge to that search as exceeding the scope of the 4019 Dupont Warrant.  The

warrant describes the place to be searched as the "described premises: 4019 Dupont Ave N, Unit

#2."  Mr. Roberson contends this description did not include the Yukon parked in the back parking

area by the garage.  Upon surveying relevant precedents, as discussed below, the Court concludes

that the law applicable to whether the 4019 Dupont Warrant authorized police to search the Yukon is, at best, ambiguous.

The Eighth Circuit has held that a warrant permitting law enforcement to search the "premises" of a residence generally permits law enforcement to search vehicles on the property of the residence, even when the warrant itself does not specifically reference those vehicles. *See, e.g., United States v. Coleman*, 909 F.3d 925, 932 (8th Cir. 2018) ("We conclude that the warrant to search 'the premises and curtilage area' permitted the officers either to search a vehicle parked in the curtilage, or, more prudently, to have a drug dog sniff the vehicle's exterior to confirm there was probable cause to search the vehicle for contraband named in the warrant."); *United States v. Pennington*, 287 F.3d 739, 745 (8th Cir. 2002) (finding use of the modifier "premises" would have allowed for a broader search beyond the "residence" actually identified in the warrant); *United States v. Reivich*, 793 F.2d 957, 963 (8th Cir. 1986); *United States v. Dunn*, 723 F.3d 919, 929 (8th Cir. 2013).

However, 4019 Dupont is not a single-family residence; it is a duplex. Mr. Roberson argues multi-unit dwellings are fundamentally different from single-family homes and posits that there is "no authority in the Eighth Circuit to support the position that a warrant authorizing the search of a single ***duplex or apartment unit*** allows law enforcement to search allegedly associated vehicles parked in common areas…." (ECF No. 57 at 16, emphasis in the original.) Having found no binding case law on point, the Court agrees, but there appears to be no authority clearly precluding such a search, either.

A duplex shares characteristics of both single-family homes and muti-unit apartment buildings, and that makes the proper scope of a premises search involving a single unit in a duplex difficult to define. The Eighth Circuit declined to address this question squarely in *United States*

16

*v. McCaster,* 193 F.3d 930 (8th Cir.1999). *McCaster* involved the search of a hall closet common to both units of a duplex. There, the court avoided the question of scope, holding that if the closet was part of the curtilage of the unit it was subject to the warrant, and if it was not part of the curtilage the defendant had no protectable expectation of privacy. *Id.* at 932-33. In contrast, a previous decision in this District more clearly held that a duplex's basement laundry room, a common area of the residence, was "reasonably within the scope of a search of either unit." *United States v. Mariano*, No. 11-cr-243 (1) (DWF), 2012 WL 116036, at *2 (D. Minn. Jan. 13, 2012).

Mr. Roberson cites contrary authority from other circuits, including *United States v. Smith*, a case involving largely analogous facts, in which the court held that a search warrant did not authorize law enforcement to search a car in the driveway of a duplex using keys found inside the unit. 533 F.Supp.2d 227 (D. Mass. 2008). However, the search warrant in *Smith* did not include the "premises" of the unit as the 4019 Dupont Warrant does here, and its omission of that term was material to the court's decision. *Id.* ("The warrant for Smith's Apartment was limited to the second floor of the two-family house in question and did not permit a search of the 'premises' or 'property' at a certain address.").

Mr. Roberson also cites *United States v. Matthews*, 597 F.Supp.3d 694 (D.N.J. 2022), for the proposition that the "premises" of a single unit in a multi-unit dwelling does not include areas outside the building. The *Matthews* court held that a warrant to search "the premises" of a unit in an apartment building did not permit law enforcement to search a locked, detached garage outside the building using a key they found in the defendant's apartment. *Id.* at 708. But *Matthews* involved an apartment building, not a 2-unit duplex, and the fact that a duplex is more like a single-family residence, with outside spaces that are more private than those at an apartment building, makes this case a closer call.

17

Though these cases are informative, there appears to be no definitive, binding precedent on all fours with the search at issue here. But regardless of whether the search in fact exceeded the scope of the warrant or not, suppression is unwarranted if the officers reasonably believed the warrant authorized them to search the Yukon, such that the "good faith" exception to the exclusionary rule applies. *See United States v. Shrum*, 59 F.4th 968, 974 (8th Cir. 2023) ("The Leon good-faith exception to the exclusionary rule … allows the admission of evidence obtained by officers who '*reasonably believed* that the warrant authorized the search, even if their interpretation was mistaken.'") (quoting *United States v. Suellentrop*, 953 F.3d 1047, 1050 (8th Cir. 2020) ("The Fourth Amendment allows for some honest mistakes that are made by officers in the process of executing search warrants.") (cleaned up)).

There is clear precedent in this Circuit for the proposition that a premises warrant for a single-family home authorizes a search of vehicles on the property. *See Coleman*, 909 F.3d at 932. As previously discussed, the law is far from clear as to whether a premises warrant for a duplex unit authorizes a search of vehicles on the property. But a duplex looks and feels more like a single-family home than an apartment building, and in the absence of contrary precedent, it was not unreasonable for the officers to interpret the term "premises" to include vehicles on the property that were definitively connected to the unit searched. The officers located the keys to the Yukon inside Unit #2 before they searched the Yukon, thus tying that vehicle to the unit. They did not rely on the 4019 Dupont warrant to conduct a blanket search of every car on the duplex property but instead narrowed their search to the Yukon because it was clearly associated with Unit #2. (*See* Def. Ex. 14 at 2, subsequent affidavit supporting warrant to search Lakaila Conley's Mazda, which was parked next to the Yukon.) For these reasons, the Court concludes that the officers' belief that the warrant extended to the Yukon was reasonable, and therefore, the *Leon*

18

good faith exception applies and establishes an additional basis to deny Mr. Roberson's motions to suppress (ECF Nos. 32 and 34).

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Terrell Vonshay Roberson's Motion to Disclose and Make Informants Available for Interview (ECF No. 30) is **DENIED**.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Terrell Vonshay Roberson's Motion to Suppress Evidence Obtained Pursuant to Warrant (ECF No. 32) and Motion to Suppress Physical Evidence Obtained from Warrantless Search (ECF No. 34) be **DENIED**.


Dated: July 8, 2026                              *s/ Dulce J. Foster*
                                                 Dulce J. Foster
                                                 United States Magistrate Judge


## NOTICE

### Order

**Filing Objections:** The above Order is not appealable to the Eighth Circuit Court of Appeals until the conclusion of this matter.

Under Local Rule 72.2(a)(1), "a party may file and serve written objections to the order within 14 days after being served a copy" of the order. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(a)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

19

## Report & Recommendation

**Filing Objections:** The above Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).