# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 25-cr-372 (MJD/DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| Terrell Vonshay Roberson, | |
| Defendant. | |

This matter is before the Court on Defendant Terrell Vonshay Roberson's Motion to Compel Controlled-Buy Discovery ("Motion") (ECF No. 75). Based on the parties' written submissions, and on the entire file, the Court denies Mr. Roberson's Motion.

## I.    BACKGROUND

During a motion hearing for a previous round of pretrial motions from Mr. Roberson, Sergeant Jeffrey Werner of the Minneapolis Police Department ("MPD") testified that he received information in March 2025 from a confidential reliable informant ("CRI"), who said Mr. Roberson was dealing fentanyl and had been in possession of firearms. (ECF No. 52 at 27-28.) The CRI reported that Mr. Roberson conducted his operations from 4019 Dupont Avenue North, Unit #2 ("4019 Dupont"). (*Id.*) Police surveillance and investigation established that 4019 Dupont was a duplex and that Lakaila Conley was its primary resident. (*Id*. at 31, 46.)

The police took multiple steps to corroborate the CRI's information. (*Id.* at 29.) In addition to surveilling Mr. Roberson entering 4019 Dupont, Sergeant Werner obtained a phone tracking warrant using a phone number the CRI had provided to track Mr. Roberson's location. (*Id.* at 28-31; Def. Ex. 4, "Phone Tracking Warrant".) Sergeant Werner also obtained a warrant to place a tracking device on Mr. Roberson's Dodge Ram truck. (ECF No. 52 at 29–31; Def. Ex. 5, "Truck

Tracking Warrant".)  According to Sergeant Werner, police observed from the tracking that Mr. Roberson would go to the duplex at 4019 Dupont "daily, almost, and sometimes multiple times throughout the day", but he slept at a different address in Roseville or St. Paul.  (*Id*. at 31.)  As part of the investigation, police also used the CRI to conduct a controlled purchase of fentanyl from Mr. Roberson just outside 4019 Dupont.  (*Id*. at 34; *see also* Def. Ex. 6 at 3-4.)

Based on the CRI's information, the controlled purchase, and surveillance of Mr. Roberson, Sergeant Warner obtained several additional warrants, including warrants to search: (1.) Mr. Roberson and his Dodge Ram truck ("Dodge Ram Warrant") (Def. Ex. 6); (2.) 4019 Dupont, Unit #2 ("4019 Dupont Warrant") (Def. Ex. 7); and (3.) Mr. Roberson and his residence in Roseville at 3110 Old Highway 8, Apartment #417 ("3110 Old Highway 8 Warrant") (Def. Ex. 8). (ECF No. 52 at 34–35.)  Sergeant Werner's applications for each of the warrants he obtained all either relied on information provided to Sergeant Werner by the CRI or described the controlled purchase involving the CRI.

In his initial round of motions, Mr. Roberson sought an order compelling the Government to disclose the identity of the CRI (and any other informant) utilized by MPD in their investigation of Mr. Roberson.  (*See* ECF No. 30.)  The Court denied this motion on the basis that the CRI's identity was not material, as he is "best characterized as a tipster whose identity is not material to the outcome of the case."  (ECF No. 72 at 5-6, citing *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991)).  The Court noted that although the CRI had participated in the controlled purchase, the controlled purchase itself was not a charged offense.  (ECF No. 72 at 6-7, citing *United States v. Bradley*, 924 F.3d 476, 482 (8th Cir. 2019) (holding "confidential informant's participation in an uncharged controlled buy" did not alter conclusion that informant's identity was not subject to disclosure).)

Mr. Roberson now brings his Motion seeking an order directing the Government to produce evidence in response to ten requests related to the controlled buy:

1. All audio recordings, video recordings, body-worn camera ("BWC") recordings, squad-camera recordings, surveillance recordings, photographs, and electronic surveillance depicting, recording, monitoring, or documenting the alleged controlled buy.

2. All police reports, supplemental reports, investigative memoranda, surveillance logs, officer notes, rough notes, debriefing reports, and other written documentation concerning the alleged controlled buy (including, but not limited to, the "very small report" inventory-related about which Sergeant Werner testified at the Motion Hearing (T. 60-61).

3. All records reflecting the date, time, location, participants, surveillance positions, observations, and outcome of the alleged controlled buy.

4. All photographs, recordings, reports, notes, and documentation reflecting the recovery, seizure, handling, packaging, storage, transportation, and chain of custody of any substance allegedly obtained during the controlled buy.

5. All laboratory reports, field-test results, confirmatory-test results, certificates of analysis, analytical worksheets, bench notes, chromatograms, spectra, quality-control records, and underlying data relating to any substance allegedly obtained during the controlled buy.

6. All evidence-submission forms, property reports, inventory records, chain-of-custody records, and laboratory-submission documents relating to any substance allegedly obtained during the controlled buy.

7. All communications, including emails, text messages, electronic messages, reports, and memoranda, concerning the planning, execution, monitoring, documentation, testing, or results of the alleged controlled buy.

8. Any recordings, reports, notes, photographs, or other materials that are inconsistent with, contradict, or fail to corroborate the Government's account of the alleged controlled buy.

9. Any documentation reflecting that recordings, reports, notes, photographs, or other evidence relating to the alleged controlled buy were lost, destroyed, overwritten, not preserved, or otherwise unavailable.

10. All Brady, Giglio, Rule 16, and other discoverable material relating to the alleged controlled buy, including any information favorable to the defense concerning whether the alleged transaction occurred, the identity of the substance

involved, the quantity of the substance involved, the observations of law enforcement, the chain of custody, or the accuracy and reliability of any testing performed.

(ECF No. 76-1.)

## II.    ANALYSIS

There is no general constitutional right to discovery in a criminal case.  *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000).  Instead, "[i]n most circumstances ... a defendant must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government." *Id.*

Mr. Roberson contends the disclosures he demands are required under Fed. R. Crim. P. Rule 16(a)(1)(E) and 16(a)(1)(F). Those Rules require production of documents, objects, examinations and tests in the government's possession that are "material to preparing the defense", to be used in the government's its case-in-chief at trial, or belong to the defendant.  Fed. R. Crim. P. 16(a)(1)(E), 16(a)(1)(F).  Mr. Roberson further argues *Brady v. Maryland*, 373 U.S. 83 (1963), requires production of the controlled-buy materials.  *Brady* mandates that the government must produce "evidence favorable to an accused ... where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  This obligation includes evidence that can be used to impeach a government witness.  *Giglio v. United States*, 405 U.S. 150, 154–55 (1972).

The Court has already ordered the Government to disclose Rule 16 and *Brady* evidence on at least two prior occasions.  (ECF Nos. 9, 11.)  The Government acknowledges it has an affirmative and ongoing obligation to disclose this evidence.  (ECF No. 78 at 3, 8.)  However, the Government argues the requested controlled-buy information is not discoverable because it is not exculpatory and is not material to Mr. Roberson's defense.  The Court agrees.  Mr. Roberson has

not adequately demonstrated that the controlled-buy information is exculpatory or otherwise material to his case, as is required by Rule 16 and *Brady*.

"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Harrington*, 951 F.2d 876, 878 (8th Cir. 1991). Here, there is no reason for the Court to believe production of the requested controlled-buy information would affect the outcome of the case. As the Court explained in its previous Order (ECF No. 71), which denied Mr. Roberson's request for the CRI's identity, the controlled buy is not a charged offense. *See id.* at 878 (holding confidential informant who participated in controlled buy but "neither witnessed nor participated in the search" that led to the charges "could not offer any evidence bearing on the … charges"). There is thus no reason to believe the government intends to offer evidence related to the controlled buy at Mr. Roberson's trial. Moreover, Mr. Roberson has proffered no basis from which the Court could infer that any such evidence might be exculpatory. Based on the record before it, the Court is compelled to conclude the requested information would not reasonably affect the outcome of the case.

Mr. Roberson's primary argument is that the controlled-buy information he requests is material because it might support a *Franks* hearing. Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant "may request a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013). But generally, the fact that a defendant wishes to seek a *Franks* hearing "does not entitle him or her to additional discovery before the *Franks* hearing." *United States v. Randle*, No. 19-cr-50 (ADM/TNL), 2019 WL 4597602, at *2 (D. Minn. Sept. 23, 2019). Mr. Roberson has proffered no facts even hinting that Sergeant Werner's declarations might be false. His argument amounts to baseless conjecture

that the materials might possibly contain evidence that could support a future motion for a *Franks* hearing.  But the *Franks* court expressly cautioned that the purpose of the substantial preliminary showing required for a *Franks* hearing is to "prevent the misuse of a veracity hearing for purposes of discovery or obstruction."  438 U.S. at 170.  Here, Mr. Roberson attempts to use the speculative possibility of a *Franks* hearing for a purpose that the *Franks* court explicitly disclaimed.  This Court has already denied Mr. Roberson's request for the CRI's identity on this ground, and the same reasoning applies to the Motion now before the Court.

Furthermore, granting Mr. Roberson's Motion would risk effective disclosure of the CRI's identity by divulging suggestive details, including audio recordings, video recordings, and the date, time and location of the controlled buy.  *See United States v. Byrne*, 83 F.3d 984, 991 (8th Cir. 1996) (denying defendant's motion to compel in part on basis that the requested evidence would reveal the identity of a confidential informant).  To grant Mr. Roberson's Motion without a specific reason to believe the information might be material would effectively open the door to disclosing a CRI's identity in all cases involving use of a CRI to support a search warrant.  The Court has already declined Mr. Roberson's request to disclose the CRI's identity, and Mr. Roberson provides no basis to reconsider that order.

Mr. Roberson cites *United States v. Tucker*, No. 18-cr-89 (JRT/DTS), 2018 WL 6630515 (D. Minn. Dec. 19, 2018), for the proposition that disclosure of the information he seeks is required.  The *Tucker* opinion includes a footnote ordering the production of police reports of two uncharged controlled buys on the ground that they constituted Rule 16 evidence.  *Tucker*, 2018 WL at *3 n. 2.  But *Tucker* is distinguishable for multiple reasons.  First, the charged offense in *Tucker* was the result of a warrantless stop-and-frisk, and the reasonable suspicion required for the stop relied entirely on the officer's knowledge of two prior controlled buys.  Here, the charged

6

offenses arose from warrants which, in part, relied on sworn applications detailing the controlled buys. Those warrant applications were, in turn, found by neutral judges to support probable cause. Second, unlike the stop-and-frisk in *Tucker*, the warrants here were supported by far more than just the controlled buy. They were also supported by the informant's tip, police surveillance, and phone-ping and GPS tracking. Finally, Mr. Roberson requests significantly more than just the police reports that the *Tucker* court ordered the government to produce in that case. Mr. Roberson offers no persuasive justification to obtain the large swath of information he seeks. For all these reasons the Court is not convinced that *Tucker* mandates the disclosures he seeks.

Mr. Roberson has not shown the requested controlled-buy information is either exculpatory or material to the outcome of his case. For these reasons, the Court denies Mr. Roberson's Motion.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Terrell Vonshay Roberson's Motion to Compel Controlled-Buy Discovery (ECF No. 75) is **DENIED**.


Dated: August 5, 2026                    *s/ Dulce J. Foster*
                                         Dulce J. Foster
                                         United States Magistrate Judge

7