**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

United States of America,
Plaintiff,

v.

Terrell Vonshay Roberson,

Defendant.

**ORDER ADOPTING REPORT AND RECOMMENDATION**

**Case No. 25-cr-00372 (MJD/DJF)**

---

Matthew D. Forsgren, Forsgren Fisher, Counsel for Defendant.

Albania Concepcion, Assistant United States Attorney, Counsel for Plaintiff.

---

The above-entitled matter comes before the Court upon the Report and Recommendation ("R&R") of United States Magistrate Judge Dulce J. Foster filed July 8, 2026. (Doc. 72.) Defendant Terrell Vonshay Roberson ("Defendant") has filed objections to the R&R. (Doc. 79.) The United States ("Plaintiff") responded to such objections. (Doc. 81.)

Pursuant to statute, the Court has conducted a de novo review upon the record. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). Based upon that review, the Court adopts the Report and Recommendation of Magistrate Judge Foster.

## I. FACTS

The Court adopts the facts as stated in Magistrate Judge Foster's R&R; the Court restates only the facts here that are relevant to the Court's analysis.

In March 2025, police received information from a confidential reliable informant ("CRI"), who stated that Defendant was dealing fentanyl and had been in possession of firearms. (Doc. 72 at 1–2.) The CRI reported that Defendant conducted his operations from 4019 Dupont Avenue North, Unit #2 ("4019 Dupont"). (Id. at 2.) Subsequent surveillance revealed that 4019 Dupont was a duplex and that Lakaila Conley was its primary resident, while Defendant lived in Roseville, Minnesota. (Id.) The police took additional steps to verify the CRI's information, including by monitoring Defendant entering 4019 Dupont and obtaining a warrant to track Defendant's phone and car. (Id.)

Based on the CRI's information and police surveillance, Sergeant Jeffrey Werner of the Minneapolis Police Department ("MPD") applied for search warrants of Defendant's truck, his residence in Roseville, and the 4019 Dupont residence. (Id.) The 4019 Dupont search warrant and subsequent seizure of evidence found there is the focus of Defendant's suppression motions.

The 4019 Dupont search warrant authorized the search of the "described premises: 4019 Dupont Ave N, Unit #2" for illegal narcotics, narcotics

paraphernalia, documents showing constructive possession, firearms and firearms accessories, proceeds from the sale of illegal narcotics, and cell phones. (Id. at 3 (citing Def. Ex. 7).)

On March 27, 2025, MPD officers executed the 2019 Dupont warrant. (Id. at 3.) While searching the unit, officers found keys to a GMC Yukon in a jacket pocket. (Id. (citing Doc. 52 at 41–42.) Lieutenant Adam Lepinski of the MPD then used the keys to connect the unit to a Yukon parked in the rear of the duplex – which Lieutenant Lepinski later testified was still on the property – by fitting one of the keys into the lock. (Doc. 52 at 42–47, 99.) When officers searched the Yukon, they found pieces of mail with Lakaila Conley's name on it and a driver's license for an unrelated individual but no documents with Defendant's name inside the car. (Id. at 51.) In addition, officers also located three backpacks in the back of the car that contained three firearms, gun magazines with ammunition, narcotics, and items used for narcotics packaging. (Doc. 72 at 3–4 (citing Doc. 52 at 51, 102–103).)

Following the search of the 4019 Dupont location and the Yukon, police obtained additional warrants, including one for a DNA buccal swab for Defendant's DNA. (Id. at 4 (citing Def. Ex. 11).) The government asserts that

Defendant's DNA was then developed on the three firearms located inside the Yukon. (Doc. 52 at 11.) Based on this evidence, the government indicted Defendant with possession with intent to distribute fentanyl, possession of a firearm in connection with a drug trafficking crime, and felon in possession of a firearm. (Doc. 1.)

Defendant moved for the government to disclose the identity of the CRI. (Doc. 30.) Defendant also moved for the suppression of the evidence seized from the Yukon as well as the suppression of any evidence derived from the warrants following the search of the Yukon as fruits of the poisonous tree. (Docs. 32, 34.)

Magistrate Judge Foster held a motion hearing on April 23, 2026. At the hearing, Sergeant Werner and Lieutenant Lepinski testified for the government. During his testimony, Sergeant Werner stated that he understood "premises" to mean "the residence where they're staying, whether it's an apartment, whether it's a house, and then everything, you know, tied to that premise[s] as far as, you know, the property, the yard, the garage." (Doc. 72 at 3 (citing Doc. 52 at 26).) When asked how he decides whether a car parked in the backyard is on or off a premises to be searched, Sergeant Werner also testified that "[i]f you got things in the house, a car title, a car key that's tied to that vehicle that's parked in the

back, we're going to consider that part of the premise[s]." (Id. (citing Doc. 52 at 27).)

## II. REPORT AND RECOMMENDATION DETERMINATIONS & ACCOMPANYING OBJECTIONS

As part of her recommendation, Magistrate Judge Foster analyzed 1) Defendant's two motions to suppress evidence (Docs. 32, 34); and 2) Defendant's motion to disclose confidential informants (Doc. 30.)

The Court evaluated Magistrate Judge Foster's determinations and ultimately denies both of Defendant's motions to suppress evidence as well as Defendant's motion to disclose informants for the reasons stated below.

### A. Motions to Suppress Evidence (Docs. 32, 34)

Defendant moved to suppress the evidence seized from the Yukon (i.e., the firearms and fentanyl), arguing that the search exceeded the scope of the warrant for the duplex itself and no valid exception to the warrant requirement applies. (Docs. 35, 57.) Defendant also moved to suppress the evidence obtained via warrant following the Yukon search (i.e., the DNA swab that connected Defendant to the firearms), arguing that without the firearms and narcotics, the police lacked the necessary probable cause to obtain the additional warrants. (Docs. 33, 57.)

Magistrate Judge Foster recommended denying both motions based on two independently dispositive grounds: 1) Defendant's lack of standing to challenge the search, and 2) the Leon good-faith exception. (Doc. 72 at 8–19.) Defendant not only objects to these two theories but also continues to maintain that officers exceeded the scope of the 4019 Dupont warrant when they searched the Yukon. (Doc. 79 at 4–13.)

**1. "Standing" Objection**

Before considering the merits of Defendant's suppression argument, Magistrate Judge Foster determined that Defendant failed to establish a reasonable expectation of privacy in the duplex, the Yukon, or the backpacks. (Id. at 8–15.) Without demonstrating a legitimate expectation of privacy in the area searched or the item seized, a defendant has no "standing" to claim that "they were searched or seized illegally." See United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994).

Defendant's objections appear largely focused on his purported expectation of privacy in the Yukon and the backpacks found within, contending that Magistrate Judge Foster ignored the government's evidence – including "sworn warrant affidavits, hearing testimony, physical evidence, and the

Government's own factual presentation" – that established Defendant's expectation of privacy in the Yukon and the backpacks. (Doc. 79 at 4.)

Defendant's arguments are unpersuasive. As stated, a defendant is responsible for demonstrating a legitimate expectation of privacy in the place searched or the items seized. See Gomez, 16 F.3d at 256. In United States v. Maxwell, the Eighth Circuit stated that a defendant may not rely on "positions the government has taken in the case," however, a defendant can satisfy this burden by pointing to "to specific evidence in the record which the government presented [that] established his standing." 778 F.3d 719, 732 (8th Cir. 2015) (citing United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir. 1995)). Defendant here maintains that Magistrate Judge Foster "misapplied Maxwell" by "erroneously treat[ing] the absence of separate defense testimony or a name tag inside a backpack as dispositive." (Doc. 79 at 4.)

However, Defendant's position misinterprets Magistrate Judge Foster's analysis. In the R&R, Magistrate Judge Foster explains that Defendant failed to identify any evidence that 1) Defendant owned, leased, or regularly drove the Yukon, or 2) that Defendant maintained a possessory interest in the backpacks seized from the Yukon. (Id. at 10–13.) Instead, Magistrate Judge Foster noted that

police "found pieces of mail and other documents listed to Lakaila Conley and a driver's license for an unrelated third-party," but "nothing connecting Mr. Roberson with the vehicle . . . [or] to the backpacks themselves." (Id. at 13–14.) Contrary to the Defendant's characterization, Magistrate Judge Foster did not require Defendant to produce a specific type of evidence to establish a reasonable expectation of privacy; rather, Magistrate Judge Foster correctly required Defendant to produce some evidence – whether by his own initiative or by pointing to evidence presented by the government – that established an expectation of privacy to 4019 Dupont, the Yukon, or the backpacks, as Maxwell permits. Defendant did neither.

The evidence Defendant does point to – that he frequented the 4019 Dupont location, that he used the duplex/Yukon to store weapons and contraband, and that the keys to the Yukon were found in the duplex he visited often – fails to establish that the duplex served as his residence or that he owned, controlled, or ever even operated the Yukon. See e.g., United States v. Sawyer, No. 4:24-cr-267 (SEP/NCC), 2025 WL 2952283, at *4 (E.D. Mo. Sept. 8, 2025), R&R adopted, 2025 WL 2962498 (E.D. Mo. Oct. 17, 2025) ("A defendant does not have a reasonable expectation of privacy in a stash house that is the residence of

another.") (internal citation omitted); see also United States v. Green, 275 F.3d 694, 699 (8th Cir. 2001) ("The United States Supreme Court has explicitly determined that a person has no reasonable expectation of privacy in an automobile belonging to another.") (citing Rakas v. Illinois, 439 U.S. 128, 148–49 (1978)); United States v. Anguiano, 795 F.3d 873, 877–78 (8th Cir. 2015) (defendant was a mere passenger and lacked a reasonable expectation of privacy in vehicle).

Moreover, as both Magistrate Judge Foster and the government point out, courts distinguish between cases where a person has established ownership/control over a sealed container found in a place they do not own/control from cases where a person fails to establish such a connection. Establishing such ownership or control may demonstrate a legitimate expectation of privacy in the container; while failing to do so does not. Compare United States v. Alberts, 721 F.2d 636, 639–640 (8th Cir. 1983) (upholding challenge to warrantless search of opaque, closed bags owned by the defendant, which the defendant had stored on her half-sister's property with her half-sister's knowledge and permission), with United States v. Stallings, 28 F.3d 58, 60–61 (8th Cir. 1994) (finding defendant had no subjective expectation of privacy in a

tote bag left in his neighbor's field when the defendant "put on no evidence of his possession or control of the bag, his historical use of the tote bag, or his ability or attempts to regulate access to it"). As Magistrate Judge Foster determined, Defendant falls into the latter category because there is simply no evidence in the record that connects Defendant to the backpacks at all.

Defendant's objection to Magistrate Judge Foster's recommendation to deny Defendant's motion to suppress evidence based Defendant's lack of demonstrated expectation of privacy in any of the areas searched is overruled.

**2. Search Warrant Scope Objection**

In the R&R, Magistrate Judge Foster correctly points that whether the 4019 Dupont search warrant permitted police to search the Yukon is not clear based on the status of Eighth Circuit case law. (Doc. 72 at 15–16.) While the Eighth Circuit permits law enforcement to search vehicles on the property of the residence even when the warrant itself does not specifically reference those vehicles, the court has not addressed whether this authority extends to vehicles left in common spaces of duplexes or multi-unit apartment buildings. See United States v. Coleman, 909 F.3d 925, 931–932 (8th Cir. 2018). Instead, after analyzing the few cases from other circuits with analogous facts, Magistrate Judge Foster ultimately did not decide whether the Yukon search exceeded the scope of the

4019 Dupont search warrant, determining instead that suppression was not warranted based on the good faith exception enumerated in United States v. Leon, 468 U.S. 897 (1984). (Doc. 72 at 18.) Defendant objects to this determination, restating his argument that the 4019 Dupont warrant did not authorize a search of the Yukon. (Doc. 79 at 8–11.)

Defendant's objection on the warrant's scope is overruled. As stated, Magistrate Judge Foster did not decide the issue of the warrant's scope and instead rested on alternative grounds. Consequently, the Court need not address Defendant's objection to a conclusion the Magistrate Judge did not make.

**3. Good Faith Exception Objection**

Finally, Magistrate Judge Foster found that regardless of whether searching the Yukon exceeded the scope of the 4019 Dupont warrant, the Leon good faith exception prevents suppression. (Doc. 72 at 18 (citing United States v. Shrum, 59 F.4th 968, 974 (8th Cir. 2023).) The Leon good faith exception "allows the admission of evidence obtained by officers who 'reasonably believed that the warrant authorized the search, even if their interpretation was mistaken.'" Shrum, 59 F.4th at 974 (citing United States v. Suellentrop, 953 F.3d 1047, 1050 (8th Cir. 2020) (emphasis in original)). Magistrate Judge Foster concluded that because there is clear precedent in the Circuit establishing that a premises

warrant for a single-family home authorizes a search of vehicles on the property and that a duplex "looks and feels more like a single-family home than an apartment building," it was not unreasonable for officers to interpret "premises" for a duplex to include vehicles on the property clearly connected to the unit search. (Doc. 72 at 18.)

Defendant objects to the Magistrate Judge's invocation of the good faith exception, arguing first that the government waived the argument. (Doc. 79 at 11.) In support, Defendant notes that he initially briefed why the exigency, plain view, automobile, and good faith exceptions to the warrant requirement did not apply. (See Doc. 57 at 22–29.) In response, the government stated that it "does not rely on those exceptions," choosing instead to focus on the scope of the warrant. (Doc. 62 at 15–16.) Defendant contends that "this is waiver." (Doc. 79 at 11.) Defendant then maintains that the Magistrate Judge "raised good faith sua sponte", and in doing so, improperly departed from the party-presentation principle. (Id.)

The principle of party presentation requires courts "in both civil cases and criminal cases, in the first instance and on appeal . . . [to] rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of

matters the parties present." United States v. Sineneng-Smith, 590 U.S. 371, 375, (2020) (quoting Greenlaw v. United States, 554 U.S. 237, 243 (2008)). Generally speaking, this principle is "designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." Greenlaw, 554 U.S. at 244 (citing Castro v. United States, 540 U.S. 375, 381–383 (2003)). Defendant is correct that the principle prohibits courts to "override a [party's] deliberate waiver" of certain arguments/defenses. See Wood v. Milyard, 566 U.S. 463, 473 (2012).

Defendant asserts that the government's "waiver" here left him with "no occasion to specifically address the R&R's theory that a duplex 'looks and feels' like a single-family home or respond to the cases the R&R invoked for good faith." (Doc. 79 at 11–12.) The government, on the other hand, maintains that the "Leon good-faith inquiry is not an affirmative defense the Government pleads and can forfeit." (Doc. 81 at 5.) Although neither party cites binding case law addressing this issue directly, the Court is not persuaded by Defendant's position for two reasons.

First, the Court finds disingenuous the Defendant's assertion that considering the good faith exception leaves him with "no occasion" to respond to

the R&R. This is precisely what Defendant is doing by objecting to the R&R now. This is hardly a situation where Defendant has been denied the fair opportunity to respond to any assertion of a good faith exception. Contra U.S. v. Hahn, 922 F.2d 243, 247–48 (5th Cir. 1991) (declining to consider the good faith exception on appeal because the prosecution had not raised the issue before the trial court and the defendant had not had a "fair opportunity to factually respond" to this argument).

Second, the exclusionary rule is a judicially created remedy that applies "only where 'its remedial objectives are thought most efficaciously served.'" United States v. Hamilton, 591 F.3d 1017, 1028 (8th Cir. 2010) (citing Arizona v. Evans, 514 U.S. 1, 11 (1995)). Courts are then responsible for balancing "the benefits of deterrence against the costs of excluding the evidence." Id. (citing Herring v. United States, 555 U.S. 135 (2009)). These costs impose a "heavy toll on both the judicial system and society at large" because typically, application of the exclusionary rule, "in many cases, is to suppress the truth and set the criminal loose in the community without punishment." Davis v. United States, 564 U.S. 229, 237 (2011). It follows that this balancing falls cleanly into the Court's discretion, and the Court will consider the good faith exception on the merits.

Turning to the merits, Defendant also objects to the R&R's substantive finding on the good faith exception. Specifically, Defendant maintains that Sergeant Werner – who applied for the search warrants – "had more than thirty years of experience; knew 4019 Dupont was a duplex; personally drafted the Unit 2 application; contemporaneously drafted the Roseville application expressly to include associated vehicles; and had drafted other vehicle warrants." (Doc. 79 at 12 (internal citations omitted).)

Defendant's objection on this ground is also overruled. As the government points out, considering whether the officers "reasonably believed the warrant authorized the search," is judged under the "totality of the circumstances, including what the officer knew but did not include in [the] affidavit." Strum, 59 F.4th at 974 (citing United States v. Farlee, 757 F.3d 810, 819 (8th Cir. 2014)). The circumstances here involved a warrant that described the "premises" of Unit #2, where the keys to the Yukon were found inside and the car itself was parked on the property outside the building. As the R&R concluded, it is "not unreasonable for the officers to interpret the terms 'premises' to include vehicles on the property that were definitely connected to the unit searched," particularly without any binding precedent to the contrary. (Doc. 72 at 18.)

The Court agrees with Magistrate Judge Foster's conclusion and finds that the good-faith exception provides an independent basis to deny suppression in this case.

**B. Motion to Disclose and Make Informants Available (Doc. 30)**

Defendant moved for an Order requiring the Government to disclose the identity of the CRI. (Doc. 30.) Defendant argued that the CRI is not a mere tipster, but a "material witness whose allegations and involvement . . . supplied the probable cause for every major investigative step in the case." (Doc. 58. at 1–2.) In the alternative, Defendant argued that "in camera review is required" under these circumstances." (Id. at 2.)

Magistrate Judge foster denied Defendant's Motion to Disclose Informants (Doc. 30) in the same document that included her recommendations regarding Defendant's suppression motions. (See Doc. 72 at 4–8.) Defendant objects to Magistrate Judge Foster's conclusion, arguing that she applied an "improperly high materiality standard" and should have reviewed the relevant materials in camera. (Doc. 79 at 13–15.)

Magistrate Judge Foster's decision to deny Defendant's motion is a nondispositive conclusion. "The standard of review applicable to an appeal of a magistrate judge's order on nondispositive pretrial matters is extremely

deferential." Roble v. Celestica Corp., 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007). The Court will reverse such decision "only if it is clearly erroneous or contrary to law." Id. (citations omitted). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Lisdahl v. Mayo Found., 633 F.3d 712, 717 (8th Cir. 2011) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)). "A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." Knutson v. Blue Cross & Blue Shield of Minn., 254 F.R.D. 553, 556 (D. Minn. 2008) (quotation omitted).

"The Government enjoys a limited privilege to keep its informants' identities confidential, one that yields to a defendant's showing that disclosure is 'relevant and helpful' to his defense or is 'essential to a fair determination' of his case." United States v. Blair, 93 F.4th 1080, 1084 (8th Cir. 2024), cert. denied, 145 S. Ct. 401 (2024) (quoting Roviaro v. United States, 353 U.S. 53, 59–61 (1957)). The Eighth Circuit requires courts to consider whether the evidence is "material to the accused's defense or a fair determination of the cause." United States v. Harrington, 951 F.2d 876, 877 (8th Cir. 1991) (emphasis in original) (quoting

United States v. Barnes, 486 F.2d 776, 778 (8th Cir. 1973)). In "cases involving 'tipsters' who merely convey information to the government but neither witness nor participate in the offense, disclosure is not generally material to the outcome of the case and is therefore not required." Id. at 878 (citing United States v. Bourbon, 819 F.2d 856, 860 (8th Cir. 1987)).

Defendant argues that Magistrate Judge Foster applied an improperly high materiality standard, that "effectively replaced the contextual balancing test with a categorical requirement that the CRI participate in the charged conduct." (Doc. 79 at 13.) Defendant further maintains that the R&R "imposed a circular burden on a potential Franks issue," noting that the R&R "faulted Roberson for not identifying a proven false statement or already filing a Franks motion while denying access to the only civilian witness" who could confirm the CRI's statements. (Id. at 15.)

The Court discerns no error in Magistrate Judge Foster's analysis. First, she correctly states that disclosure is "almost always" required when a witness is "an active participant or witness to the offense charged," before determining that the facts presented support that the CRI in this case is best characterized as a "tipster." (Doc. 72 at 6 (citing Devose v. Norris, 53 F.3d 201, 206 (8th Cir. 1995)).)

She also noted that "the decision in Franks neither required not contemplated routine disclosure of informants identifies," further stating that the "purpose of a Franks motion is to challenge the affiant's representations, not the informant's, and Mr. Roberson has proffered no reason to question the affiant's representations here." (Id. at 7–8 (citing Colorado v. Nunez, 465 U.S. 324, 327 (1984); United States v. Skramstad, 649 F.2d 1259, 1265 (8th Cir. 1981)).) Defendant has failed to demonstrate that any of Magistrate Judge Foster's statements and application of the law are clearly erroneous or contrary to law, and the Court will defer to the R&R's conclusion on this matter.

Finally, Defendant maintains that the "Court should have reviewed the CRI and relevant materials in camera." (Doc. 79 at 15.) This argument is similarly unavailing. "'[M]ere speculation' that undisclosed information is material 'is not enough to compel . . . in camera review.'" United States v. Oliver, 950 F.3d 556, 563 (8th Cir. 2020) (citing United States v. Mazzulla, 932 F.3d 1091, 1100 (8th Cir. 2019)). Here, the Court finds that Defendant has not presented information sufficient to compel in camera review, and his objection on this ground is similarly overruled.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED** that the Court **ADOPTS** the Report and Recommendation of United States Magistrate Judge Foster filed July 8, 2026. **[Doc. 72]** as follows: Defendant's Motions to Suppress Evidence **[Docs. 32, 34]** are **DENIED**.

Dated: September 11, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court